No. 23-30466

# In the United States Court of Appeals for the Fifth Circuit

IN THE MATTER OF THE ROMAN CATHOLIC CHURCH
OF THE ARCHDIOCESE OF NEW ORLEANS,

*Debtor*

RICHARD C. TRAHANT,

*Appellant*

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ROMAN
CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS;
APOSTOLATES; ABUSE CLAIMANTS,

*Appellees*

IN THE MATTER OF THE ROMAN CATHOLIC CHURCH
OF THE ARCHDIOCESE OF NEW ORLEANS,

*Debtor*

RICHARD C. TRAHANT,

*Appellant*

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ROMAN
CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS;
APOSTOLATES,

*Appellees*

On Appeal from the U.S. District Court for the Eastern District of Louisiana
Civil Action No. 22-1740 c/w 22-4101

**PRINCIPAL BRIEF OF APPELLEE, THE ROMAN CATHOLIC
CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS**

R. Patrick Vance (#13008)
Mark A. Mintz (#31878)
Samantha A. Oppenheim (#38364)
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, LA 70170
Telephone:  504-582-8368
Facsimile:   504-589-8368
Email:  pvance@joneswalker.com
           mmintz@joneswalker.com
           soppenheim@joneswalker.com

***Counsel for Appellee,***
***The Roman Catholic Church***
***of the Archdiocese of New Orleans***

ii

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellant | Counsel for Appellant |
|---|---|
| Richard C. Trahant | Richard C. Trahant (counsel of record) *Attorney at Law* <br><br> Paul M. Sterbcow (counsel of record) *Lewis, Kullman, Sterbcow & Abramson* <br><br> Jack E. Morris (counsel of record) *Jack E. Morris, Attorney at Law, LLC* |

| Appellees | Counsel for Appellees |
|---|---|
| The Roman Catholic Church of the Archdiocese of New Orleans | R. Patrick Vance (counsel of record) <br> Elizabeth J. Futrell <br> Edward D. Wegmann <br> Mark A. Mintz (counsel of record) <br> Laura F. Ashely <br> Allison B. Kingsmill <br> Samantha A. Oppenheim (counsel of record) <br><br> *Jones Walker LLP* |
| The Official Committee of Unsecured Creditors | Omer F. Kuebel III (counsel of record) <br> *Locke Lord LLP* |
| Apostolates | Douglas S. Draper (counsel of record) <br> *Heller Draper & Horn, L.L.C.* |

iii

| Abuse Claimants | Soren E. Gisleson (counsel of record) *Herman, Herman & Katz* |
| | John H. Denenea, Jr. (counsel of record) *Shearman-Denenea, L.L.C.* |

The undersigned counsel of record further certifies, pursuant to Fed. R. App. P. 26.1, that The Roman Catholic Church of the Archdiocese of New Orleans is a non-profit corporation incorporated under the laws of the State of Louisiana. It has no parent corporation, and it issues no stock. As such, no publicly held corporation owns 10% or more of its stock.

Dated: November 27, 2023      /s/ Mark A. Mintz
_____
Mark A. Mintz

**Counsel for Appellee,**
**The Roman Catholic Church**
**of the Archdiocese of New Orleans**

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, The Roman Catholic Church of the Archdiocese of New Orleans (the "**Archdiocese**," "**Debtor**," or "**Appellee**"), respectfully submits that oral argument is unnecessary to aid the Court's decisional process because the facts and legal arguments are adequately presented in the briefs.

#101824575v2

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................................. v

TABLE OF CONTENTS ........................................................................................ vi

TABLE OF AUTHORITIES .................................................................................. viii

JURISDICTIONAL STATEMENT ......................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 2

STATEMENT OF THE CASE ................................................................................. 3

    A.    The Petition Date and Appointment of the Committee ................................ 3

    B.    The Protective Order. .................................................................................... 4

    C.    Disclosure of Protected Material in Violation of the Protective Order. ....... 6

    D.    The UST Investigation. ................................................................................ 10

    E.    The Bankruptcy Court's June 7, 2022 Order. ............................................. 12

    F.    The Show-Cause Order and the Show-Cause Hearing. ............................... 14

    G.    The October 11, 2022 Order and October 11, 2022 Opinion. ................... 16

    H.    Mr. Trahant's Appeals ................................................................................. 19

SUMMARY OF THE ARGUMENT ...................................................................... 20

STANDARD OF REVIEW ..................................................................................... 22

ARGUMENT ........................................................................................................... 24

    A.    The Bankruptcy Court Did Not Violate Mr. Trahant's Right to Due Process of Law. ........................................................................................................ 24

    B.    Mr. Trahant's Appeal of the Interlocutory June 7, 2022 Order Did Not Divest the Bankruptcy Court of Jurisdiction Concerning that Order. ........ 32

#101824575v2

C.    The Evidence Presented at the Show-Cause Hearing "Reconfirmed" the Bankruptcy Court's Finding—and Established by Clear and Convincing Evidence—that Mr. Trahant Knowingly and Willfully Violated the Protective Order. ........................................................................................................33

D.    The Bankruptcy Court Did Not Abuse its Discretion in Sanctioning Mr. Trahant for Approximately 53% of the Attorneys' Fees and Expenses Incurred By Debtor and Committee Professionals in Investigating the Protective Order Violation. ...........................................................................................................41

    a.    Legal Standards. .......................................................................................41

    b.    The Bankruptcy Court's Sanctions Award. .............................................43

CONCLUSION ......................................................................................................50

CERTIFICATE OF SERVICE ..............................................................................51

CERTIFICATE OF COMPLIANCE ......................................................................52

#101824575v2

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Akzo Nobel, Inc. v. United States*, 478 F. App'x 126 (5th Cir. 2012) ....................24

*Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000) .................24

*ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.),* 650 F.3d 593 (5th Cir. 2011)..............................................................................................................23

*Barnes v. BP Expl. & Prod. Inc.,* No. 17-3036, 2022 U.S. Dist. LEXIS 156896 (E.D. La. Aug. 30, 2022)..............................................................................33

*Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990)..............................................48

*Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985).......................................35

*Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999) ...................................24

*Carroll v. Abide (In re Carroll)*, 850 F.3d 811 (5th Cir. 2017)...............................42

*CEATS, Inc. v. TicketNetwork, Inc.,* 71 F.4th 314 (5th Cir. 2023).........................28

*Chilcutt v. United States*, 4 F.3d 1313 (5th Cir. 1993) ............................................43

*Coinbase, Inc. v. Bielski*, 143 S.Ct. 1915 (2023).....................................................33

*Dayton Indep. Sch. Dist. v. U.S. Mineral Prod. Co.,* 906 F.2d 1059 (5th Cir. 1990) ......................................................................................................................33

*Edwards Fam. P'ship v. Johnson (In re Cmty. Home Fin. Servs.)*, 990 F.3d 422 (5th Cir. 2021) .................................................................................................31

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983)........42

*Father M. v. Various Tort Claimants (In re Roman Cath. Archbishop of Portland)*, 661 F.3d 417 (9th Cir. 2011)...........................................................................17

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999) ................................... 23, 27, 42

*Grannis v. Ordean*, 234 U.S. 385 (1914).................................................................26

*Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56 (1982) ...............................33

*Hutto v. Finney*, 437 U.S. 678 (1978)........................................................................44

*In re Black,* No. 16-13200, 2017 U.S. Dist. LEXIS 111222 (E.D. La. July 18, 2017)....................................................................................................................35

*In re Blake*, 452 B.R. 1 (Bankr. D. Mass. 2011) ....................................................17

*In re Bradley*, 495 B.R. 747 (Bankr. S.D. Tex. 2013)............................................42

*In re DeMore*, 844 F.3d 292 (1st Cir. 2016)...........................................................23

*In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).....................................17

*In re Gilchrist*, 891 F.2d 559 (5th Cir. 1990) ........................................................47

*In re Hermosilla*, 450 B.R. 276 (Bankr. D. Mass. 2011)........................................23

*In re IDC Clambakes, Inc.*, 852 F.3d 50 (1st Cir. 2017) ........................................23

*In re Morrell,* 880 F.2d 855 (5th Cir. 1987) ...........................................................33

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2021 U.S. Dist. LEXIS 175207 (E.D. La. Sept. 15, 2021)............................................................................................................ 44, 48

*In re Old Cold LLC*, 879 F.3d 376 (1st Cir. 2018) ................................................23

*In re Paige*, 365 B.R. 632 (Bankr. N.D. Tex. 2007)...............................................42

*In re Rodriguez*, No. 06-323, 2007 U.S. Dist. LEXIS 11858 (W.D. Tex. Feb. 20, 2007)....................................................................................................................49

*In re Sheedy*, 801 F.3d 12 (1st Cir. 2015)...............................................................23

*In re Victory Mkts., Inc.*, 195 B.R. 9 (N.D.N.Y. 1996) ..........................................25

*In re Wilson*, 413 B.R. 330 (Bankr. E.D. La. 2009) ...............................................11

*Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328 (5th Cir. 2008)...............42

*Lamar Fin. Corp. v. Adams*, 918 F.2d 564 (5th Cir. 1990) ....................................49

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282 (5th Cir. 2002) ............43

*McGuire v. Sigma Coatings, Inc.,* 48 F.3d 902 (5th Cir. 1995) ..............................28

*Mirant Peaker, LLC v. S. Md. Elec. Coop., Inc. (In re Mirant Corp.),* No. 03-46590, 2004 Bankr. LEXIS 2455 (Bankr. N.D. Tex. June 28, 2004)..................35

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)..........................26

*Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72 (S.D. Tex. 2000).........49

*Placid Refin. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609 (5th Cir. 1997) ........................................................ 24, 26, 41

*Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon)*, 922 F.3d 13 (1st Cir. 2019) ................................................................................................ 22, 23

*Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990) .............................................43

*Ranson v. Comm'r of Soc. Sec.,* No. 21-157, 2022 U.S. Dist. LEXIS 117643 (N.D. Miss. July 5, 2022) .............................................................................35

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ...........................................43

*Shaw v. Ciox Health LLC*, No. 19-14778, 2021 U.S. Dist. LEXIS 213328 (E.D. La. Nov. 4, 2021) ............................................................................43

*Skidmore Energy v. KPMG,* 455 F.3d 564 (5th Cir. 2006) ....................................48

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486 (5th Cir. 2012) ................................................................................................ 42, 43

*Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437 (5th Cir. 2015)...................................................................................................28

*Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178 (5th Cir. 1992).......25

*Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993) ...................................................49

*U.S. Abatement Corp. v. Mobil Expl. & Producing U.S. (In re U.S. Abatement Corp.),* 39 F.3d 563 (5th Cir. 1994) .............................................. 32, 33

*United States v. Dwoskin*, 644 F.2d 418 (5th Cir. 1981) ........................................35

*Upjohn Co. v. United States*, 449 U.S. 383 (1981)................................................25

*Viegelahn v. Lopez (In re Lopez),* 897 F.3d 663 (5th Cir. 2018)............................22

x

*Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336 (5th Cir. 2015)........ 23, 24, 28

*Waste Mgmt. of Wash., Inc. v. Kattler*, No. 12-3454, 2013 U.S. Dist. LEXIS 190163 (S.D. Tex. Mar. 28, 2013), *vacated*, 76 F.3d 336 (5th Cir. 2015) ..........28

## <u>Statutes</u>

11 U.S.C. § 105(a) ................................................................ 11, 20, 24, 25, 31, 41

11 U.S.C. § 107 ................................................................................... 16, 17

11 U.S.C. § 107(a) ..............................................................................17

11 U.S.C. § 107(b) ..............................................................................17

11 U.S.C. § 107(b)(2) ..........................................................................17

11 U.S.C. § 107(c) ..............................................................................17

11 U.S.C. § 1107(a) ............................................................................31

11 U.S.C. § 330(a)(1) ..........................................................................49

28 U.S.C. § 1334 ..................................................................................1

28 U.S.C. § 158 ..................................................................................32

28 U.S.C. § 158(a) ..................................................................... 21, 32, 33

28 U.S.C. § 158(a)(1) ......................................................................2, 22

28 U.S.C. § 158(a)-(b) ........................................................................22

28 U.S.C. § 158(d)(1) ................................................................. 2, 22, 23

## <u>Rules</u>

Fed. R. App. P. 26.1 ........................................................................... iv

Fed. R. App. P. 32(a)(5) ......................................................................52

Fed. R. App. P. 32(a)(6) ......................................................................52

Fed. R. App. P. 32(a)(7)(B) ..................................................................52

Fed. R. App. P. 32(f) ..........................................................................52

#101824575v2

Fed. R. Bankr. P. 2004 ...................................................................11

Fed. R. Bankr. P. 7026 ...................................................................42

Fed. R. Bankr. P. 8001 *et seq*...........................................................1

Fed. R. Bankr. P. 8003-05 ...............................................................23

Fed. R. Bankr. P. 8004(a)(2) ............................................................32

Fed. R. Bankr. P. 8004(d) ................................................................32

Fed. R. Bankr. P. 9014 ...................................................................42

Fed. R. Civ. P. 37(b) .....................................................................42

Fed. R. Civ. P. 37(b)(2) ..................................................................42

Fed. R. Civ. P. 37(b)(2)(A) ..............................................................42

Fed. R. Evid. 803(8)(A)(iii) ............................................................34

Fed. R. Evid. 803(8)(B) ..................................................................34

Fifth Circuit Rule 28.2.1 ..............................................................iii

#101824575v2

# JURISDICTIONAL STATEMENT

The Bankruptcy Court exercises jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. § 1334. On June 7, 2022, the Bankruptcy Court issued an interlocutory order, finding that Mr. Trahant knowingly and willfully violated the Protective Order but did not sanction him at that time. ROA.11454-58. Mr. Trahant noticed his appeal of the June 7, 2022 Order to the District Court on June 10, 2022 pursuant to Fed. R. Bankr. P. 8001 *et seq*. ROA.18-20. As detailed below, Mr. Trahant did not seek leave to appeal the June 7, 2022 Order. The District Court, therefore, lacked jurisdiction over the appeal, and the Bankruptcy Court retained jurisdiction concerning the Protective Order violation. *See infra*, Argument, Part B.

Subsequently, on June 13, 2022, the Bankruptcy Court issued an Order to Show Cause, directing Mr. Trahant to appear and show cause as to why he should not be sanctioned. ROA.11504-06. After conducting an evidentiary hearing on August 22, 2022 and taking the matter under advisement, ROA.12849-909, the Bankruptcy Court imposed sanctions against Mr. Trahant on October 11, 2022, ROA.13168-97, thereby rendering the June 7, 2022 Order "final" for purposes of appeal.

Mr. Trahant appealed the October 11, 2022 Opinion to the District Court on October 21, 2022 pursuant to Fed. R. Bankr. P. 8001 *et seq*. ROA.13198-200. Because the October 11, 2022 Opinion was "final" for purposes of appeal, the

1

District Court had jurisdiction of the consolidated appeals under 28 U.S.C. § 158(a)(1).

Mr. Trahant timely appealed to this Court on July 14, 2023 from the District Court's June 21, 2023 Opinion. ROA.4793-94. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(d)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the Bankruptcy Court violated Mr. Trahant's right to due process of law when the June 7, 2022 Order imposed no sanctions and was issued to enforce the Bankruptcy Court's Protective Order and to prevent a further abuse of process.

2.      Whether Mr. Trahant's appeal of the June 7, 2022 Order divested the Bankruptcy Court of jurisdiction concerning the Protective Order violation when the order was interlocutory, and Mr. Trahant did not seek leave to appeal.

3.      Whether the Bankruptcy Court abused its discretion or clearly erred in finding that Mr. Trahant knowingly and willfully violated the Protective Order when such finding was supported by the United States Trustee's Report following an extensive, independent investigation, as well as sworn statements of Mr. Trahant and documents he produced to the United States Trustee, and was "reconfirmed" by evidence submitted at the Show-Cause Hearing.

2

4.     Whether the Bankruptcy Court abused its discretion in sanctioning Mr. Trahant for approximately 53% of the attorneys' fees and expenses incurred by Debtor and Committee professionals in investigating Mr. Trahant's breach of the Protective Order when: (a) the Order to Show Cause directed Mr. Trahant to appear and show cause as to why he should not be sanctioned for his willful violation of the Protective Order and ordered counsel for the Debtor and the Committee to submit invoices identifying time spent rendering services related to the Protective Order violation, (b) Mr. Trahant did not object to the reasonableness of the invoices, and (c) the Bankruptcy Court calculated the sanctions award using the lodestar analysis after making a specific finding of bad faith and finding by clear and convincing evidence that Mr. Trahant violated the Protective Order.

## STATEMENT OF THE CASE

### A. The Petition Date and Appointment of the Committee.

On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**"), commencing a chapter 11 case (the "**Chapter 11 Case**"). ROA.22. The Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") on May 20, 2020. ROA.10764.

3

With the Bankruptcy Court's approval, the Committee engaged the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP to serve as co-counsel to the Committee. ROA.13173. Individual members of the Committee, however, retained their existing state court counsel to advise them regarding their individual claims against the Debtor and to assist them in fulfilling their Committee duties. ROA.13173.

As of June 7, 2022, the six-member Committee was comprised solely of tort claimants alleging abuse by clergy. ROA.22, 10414. Richard C. Trahant ("**Mr. Trahant**" or "**Appellant**") serves as personal counsel to four of the six claimants who served on the Committee at that time. ROA.24.

## B. The Protective Order.

On August 3, 2020, the Bankruptcy Court entered a Protective Order to protect confidential information produced in discovery in the Chapter 11 Case. ROA.10772-92.[1] The Protective Order defines "Protected Material" (whether documents, items, or information) as discovery produced and designated by the producing party as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS EYES ONLY." ROA.10802. The producing party may designate discovery as "CONFIDENTIAL"

---

[1] The Bankruptcy Court subsequently amended the Protective Order at various times to accommodate the parties' needs. *See* Amended Protective Order, ROA.10800-20; Supplemental and Amended Protective Order, ROA.10859-63; Second Supplemental and Amended Protective Order, ROA.10876-80.

when it contains "Confidential Information," meaning "any non-public information provided by a [p]arty wherein such information is not public or available to the general public." ROA.10803.

Pursuant to Paragraph 7, any discovery material designated or marked "CONFIDENTIAL" may be disclosed only for purposes related to the Chapter 11 Case and only to certain persons: (i) the Debtor, including its officers, employees, and agents; (ii) the Committee, including its members and their attorneys; (iii) other creditors and constituents, after they have signed a Confidentiality Statement; and (iv) the UST. ROA.10807-09.[2]

Paragraph 9 of the Protective Order, in turn, identifies prohibited uses for Protected Material obtained through discovery in the Chapter 11 Case:

> **Any Protected Material, and all information derived from Protected Material** (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under this Protective Order), **shall not be used, directly or indirectly, by any person** for any business, commercial or competitive purposes, or **for any purpose whatsoever other than for Authorized Uses**.

ROA.10812 (emphasis added).

---

[2] Paragraph 8 similarly restricts the disclosure of discovery material marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY." ROA.10809-12.

Significantly, Paragraph 6 of the Protective Order outlines a simple protocol for challenging designations of "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY," and having the designations removed if appropriate. ROA.10804-07. In all other circumstances, Paragraph 10 makes clear that the Protective Order prohibits disclosure of Protected Material outside of the methods prescribed:

> Except with the prior written consent of the person asserting "CONFIDENTIAL" OR "CONFIDENTIAL – ATTORNEYS' EYES ONLY" treatment, or in accordance with a prior order of the Court after notice, **any Protected Material, and any information contained in, or derived from Protected Material** (including, but not limited to, all deposition, examination or hearing testimony that refers, reflects, or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY") **may not be disclosed other than in accordance with this Protective Order**.

ROA.10813 (emphasis added).

Mr. Trahant, as counsel to certain individual members of the Committee, read—and was subject to—the Protective Order. ROA.13106-07.

## C. Disclosure of Protected Material in Violation of the Protective Order.

In December 2021, in response to discovery requests in the Chapter 11 Case, the Debtor produced to the Committee certain materials marked "CONFIDENTIAL" pursuant to the Protective Order. ROA.10899. The production included documents related to proceedings held before the Archdiocese's Internal

6

Review Board ("**IRB**"), which investigates allegations of sexual abuse of minors by clergy. ROA.10899. The confidential IRB documents included information regarding certain abuse allegations against a priest whose name was not identified in any proof of claim filed in the Chapter 11 Case or included on the Archdiocese's "Credibly Accused List." ROA.13180.

During a phone call on January 4, 2022, counsel for the Committee informed Debtor's counsel about its concerns that a priest against whom an abuse allegation had been made was serving as chaplain at a local high school. ROA.10899. Later that day, Committee counsel sent Debtor's counsel a letter, identifying the priest's name and demanding that he be suspended or removed from his position. ROA.10900. Counsel for the Debtor promptly contacted its client and learned that the priest was on extended medical leave and, therefore, was not in contact with minors at the school at that time. ROA.10900. However, counsel also learned that a then-unidentified person had already contacted the school about the priest and disclosed confidential information in violation of the Protective Order. ROA.10900-01. When Debtor's counsel informed Committee counsel about this apparent breach of the Protective Order, Committee counsel stated that there had been no contact with the school by "the Locke Lord or Pachulski teams." ROA.10901.

On January 18, 2022, a reporter informed the Archdiocese that he intended to publish an article about the priest at issue and the alleged abuse allegation against

him. ROA.10902. Shortly thereafter, the reporter published an article on Nola.com that disclosed details about the priest, the individual making the allegation, the allegation itself, and the resolution of the investigation. ROA.10903.

In response, on January 20, 2022, the Debtor filed a sealed motion with the Bankruptcy Court titled *Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order* (the "**Sealed Motion to Compel**"). ROA.4863-73, 10894-906.[3]

The Bankruptcy Court, in its discretion, held sealed status conferences with counsel for the Debtor, the Committee, and the UST on January 27, 2022, February 11, 2022, March 11, 2022, and April 14, 2022 to discuss the allegations raised in the Sealed Motion to Compel. ROA.10910, 12936-13097.[4] Counsel for the Debtor and the Committee indicated that they did not know who was responsible for the apparent breach of the Protective Order. ROA.12967-69, 13004-05. They also agreed to issue discovery to confirm that there had been a breach and to determine who was responsible. ROA.11213, 12988.

---

[3] As further explained below, pursuant to an Order dated October 11, 2022, ROA.12934-35, the Bankruptcy Court *sua sponte* unsealed the Sealed Motion to Compel and entered a redacted copy in the record. ROA.10894-906.

[4] On October 11, 2022, the Bankruptcy Court *sua sponte* unsealed the Transcripts of Status Conferences held on February 11, 2022, March 11, 2022, and April 14, 2022 and entered redacted copies in the record. ROA.12936-13097.

8

Discovery responses received from the local high school in April 2022 revealed that Mr. Trahant had contacted the principal beginning on December 31, 2021 and disclosed Protected Material. ROA.5489-97, 13022-26. According to the responses, Mr. Trahant sent a text message to the principal on December 31, 2021 to ask about the status of the priest; he also had a phone call with the principal on January 4, 2022, during which he disclosed the allegation against the priest. ROA.5492-93, 13024-25.

Shortly thereafter, on April 13, 2022, the Committee filed under seal a submission regarding the Sealed Motion to Compel, purportedly to demonstrate that the Committee, its members, and their individual counsel (including Mr. Trahant) had no knowledge of a Protective Order violation. ROA.11188-203. That submission included the *Declaration of Richard C. Trahant* dated April 12, 2022 (the "**Trahant Declaration**"), wherein Mr. Trahant admitted for the first time that, based on confidential documents produced by the Debtor to the Committee in discovery, he contacted his cousin who is the principal of the school regarding the priest at issue. ROA.13098-101.[5] However, Mr. Trahant also declared that he "did not provide any 'confidential' documents to or discuss the contents of any 'confidential' documents with" officials at the school and "did not disclose or

---

[5] On October 11, 2022, the Bankruptcy Court *sua sponte* unsealed the Trahant Declaration and entered a redacted copy in the record. ROA.13098-101.

disseminate any documents marked in any way confidential, the contents of documents, or any other information produced by the Debtor to" anyone affiliated with local newspapers. ROA.13100-01.

### D. The UST Investigation.

On April 25, 2022, the Bankruptcy Court issued an Order (the "**April 25, 2022 Order**"), directing the UST to conduct an independent investigation. ROA.11212-14. After reviewing the discovery responses, the Bankruptcy Court was

> very concerned about the possibility of intentional dissemination of highly confidential information in violation of this Court's Protective Order, as well as the timing of any such breach, and the negative impact it has on the functioning of the Committee, the rights of parties in interest in the bankruptcy process, and the ability of the parties in this case to proceed in good-faith mediation of claims asserted against the estate.

ROA.11213. The Bankruptcy Court ordered the UST to complete its investigation and file "under seal" a Statement of Position on or before June 3, 2022. ROA.11213.

On June 3, 2022, the UST filed a report under seal, as ordered (the "**UST Report**"). ROA.1568, 5339-9434.[6] The UST Report included the following attachments:

> 78 sworn declarations; 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure; one transcript and one summary of two unsworn telephonic interviews; and

---

[6] The UST Report and its attachments remain under seal because they are "voluminous and replete with Protected Material." ROA.13180 n.8.

> numerous documents produced to the UST pursuant to Rule 2004, including relevant telephone and text message logs, electronic transaction reports, and e-mail and letter correspondence.

ROA.11456.[7] Among those attachments were Mr. Trahant's responses to the UST's discovery requests, ROA.13181, and a transcript of Mr. Trahant's sworn examination pursuant to Bankruptcy Rule 2004, ROA.8434-725, 13102-67.[8] In his deposition, Mr. Trahant admitted that he texted his cousin, the high school principal, on December 31, 2021 to inquire about the priest by name, knowing that his cousin would immediately infer that the priest had been accused of sexual abuse. ROA.13111-12. Mr. Trahant also admitted to further text and telephone conversations with his cousin through January 4, 2022, during which he disclosed the nature of the allegations against the priest, which he had only learned from the Protected Material produced in discovery. ROA.13117, 13119-21. In the deposition, the UST also presented Mr. Trahant with his January 1, 2022 email to a reporter,

---

[7] A bankruptcy court may authorize the UST to conduct discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") or § 105(a) of the Bankruptcy Code to elicit information regarding potentially sanctionable conduct. *See, e.g.*, *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009) (denying motions to quash the UST's discovery requests in connection with a *sua sponte* Order to Show Cause). Here, the UST Report reflects the UST's factual findings based on discovery and examinations conducted pursuant to Bankruptcy Rule 2004. The Bankruptcy Court, therefore, was entitled to rely upon that information in issuing both the June 7, 2022 Order and the October 11, 2022 Opinion, as defined below. For a further discussion of the admissibility of the UST Report, *see infra* note 22.

[8] On October 11, 2022, the Bankruptcy Court *sua sponte* unsealed Mr. Trahant's deposition transcript (the "**Trahant Deposition Transcript**") and entered a redacted copy in the record. ROA.13102-67.

11

which contained the priest's name in the subject line and read: "Keep this guy on your radar. He is currently the chaplain at [the school]." ROA.13113. Mr. Trahant testified that he knew the reporter would infer from the email that the priest had been accused of sexual abuse; he further admitted that he intended for the reporter to write about the alleged misconduct. ROA.13113, 13124.

The UST Report found, among other things, that (i) Mr. Trahant had read and was bound by the Protective Order; (ii) he knew that he was bound by the Protective Order; and (iii) beginning on December 31, 2021, he violated the Protective Order by providing, on multiple occasions, confidential information he received to third parties and the media. ROA.11456; *see also* ROA.5340-79.

**E. The Bankruptcy Court's June 7, 2022 Order.**

On June 7, 2022, after reviewing the UST Report and its attachments, the Bankruptcy Court entered an Order (the "**June 7, 2022 Order**"), concluding that Mr. Trahant's testimony and certain documents attached to the UST Report confirmed the UST's findings that Mr. Trahant violated the Protective Order. ROA.11454-58. The Bankruptcy Court also found that Mr. Trahant's breach was "knowing and willful" and, therefore, "clearly disqualifie[d] him from further receiving Protected Material . . . and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation." ROA.11456-57.

As a result of those findings, the Bankruptcy Court explained, it was faced

with a Hobson's choice:

> To be sure, Trahant has never served as a member of the
> Committee; yet, as personal counsel to individual
> Committee members, Trahant and his team of co-counsel
> received confidential information from the Debtor. The
> Court acknowledges that individual Committee members
> may retain the attorney of their choosing to represent their
> personal interests in this chapter 11 case and have chosen
> Trahant and his group. This Court certainly has no
> intention of invading the attorney-client privilege to
> modulate the communications between those Committee
> members and their attorneys; indeed, any attempt to
> regulate or stop the flow of information or candor that
> must exist between a client and her attorney is not only a
> futile endeavor, but would offend a fundamental facet of
> effective legal representation. Thus, an impasse has been
> reached.

ROA.11457. Rather than deprive Mr. Trahant's clients of counsel of their choice,

the Bankruptcy Court was "forced" to resolve the dilemma by directing the UST to

relieve the four members of the Committee represented by Mr. Trahant from service

on the Committee. ROA.11457-58. The Bankruptcy Court explained that it was

compelled to act in this manner "to protect against disruption of the bankruptcy

process, to guard the rights of all parties in interest, and, most immediately in light

of the current posture of this case, to preserve the trust in the confidentiality of

mediation." ROA.11457. The Bankruptcy Court concluded the June 7, 2022 Order

by stating that it would "issue a separate Order To Show Cause to determine

appropriate sanctions for Trahant's disclosure of confidential information in violation of this Court's Protective Order." ROA.11458.[9]

On June 10, 2022, Mr. Trahant appealed the June 7, 2022 Order to the District Court, thereby initiating Civil Action No. 22-1740. ROA.18-20. As discussed below, Mr. Trahant's appeal did not divest the Bankruptcy Court of jurisdiction over issues concerning the Protective Order violation because the June 7, 2022 Order was not immediately appealable. *See infra*, Argument, Part B.

### F. The Show-Cause Order and the Show-Cause Hearing.

On June 13, 2022, the Bankruptcy Court issued an Order to Show Cause (the "**Show-Cause Order**") that directed Mr. Trahant to appear and show cause (the "**Show-Cause Hearing**") as to why he should not be sanctioned for his willful violation of the Protective Order; it also granted him access to the UST Report and all exhibits. ROA.11504-06.

The Show-Cause Order further instructed counsel for the Debtor and the Committee to submit invoices identifying professional time spent on services related to the Sealed Motion to Compel. ROA.11506. As ordered, professionals of the

---

[9] That same day, the UST filed a *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors*, thereby removing the four members who are individually represented by Mr. Trahant, and leaving on the Committee the two members who are not individually represented by Mr. Trahant. ROA.11459. On June 21, 2022, the UST filed another *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors*, adding three new members to the Committee. ROA.14048-49.

Debtor and the Committee submitted invoices identifying that a total of $760,884.73 in attorneys' fees and costs was incurred in rendering such services. ROA.13184-85.

On August 8, 2022, Mr. Trahant filed an objection to the Show-Cause Order, arguing that the June 7, 2022 Order violated his right to due process of law. ROA.12795-804. Mr. Trahant did not object to the reasonableness of the invoices filed in response to the Show-Cause Order. ROA.12795-804.

The Bankruptcy Court held the Show-Cause Hearing on August 22, 2022, during which Mr. Trahant was represented by counsel and offered sworn testimony. ROA.12849-909. Once again, Mr. Trahant lodged no objection to the invoices submitted in response to the Show-Cause Order. ROA.12849-909. Mr. Trahant's testimony at the hearing confirmed that he obtained confidential information regarding the priest at issue solely from discovery he received as counsel to certain Committee members. ROA.12884, 12890-91. Mr. Trahant admitted that he sent a text message to his cousin containing the priest's name and asking if he was still employed at the school, knowing that his cousin would understand that the priest had been accused of sexual abuse because Mr. Trahant has a history of litigating sexual abuse claims against the Archdiocese. ROA.12881-82. Although Mr. Trahant testified that he did not believe he had violated the Protective Order because he contended that he gave no physical documents to anyone, ROA.12882, he conceded

that he disclosed the priest's name to his cousin and the reporter to "plant a seed" because he thinks "this stuff needs to be exposed." ROA.12886-88.

After receiving Mr. Trahant's testimony and considering the record and the arguments of counsel, the Bankruptcy Court took the matter under advisement. ROA.12908.

### G. The October 11, 2022 Order and October 11, 2022 Opinion.

On October 11, 2022 (the "**October 11, 2022 Order**"),[10] the Bankruptcy Court *sua sponte* partially unsealed and published redacted copies of the following documents:

i.    The Debtor's Sealed Motion to Compel, ROA.10894-906;

ii.   Transcripts of Status Conferences held on February 11, 2022, March 11, 2022, and April 14, 2022, ROA.12936-13097;

iii.  The Trahant Declaration, ROA.13098-101;

iv.   The Trahant Deposition Transcript, ROA.13102-67; and

v.    Transcript of Show-Cause Hearing held on August 22, 2022, ROA.12849-909.

The Bankruptcy Court explained that these documents had been filed under seal at the request of the Debtor or the Committee or on the Bankruptcy Court's own motion under 11 U.S.C. § 107 and that redacted copies were being provided "to shield Protected Material . . . and to protect persons with respect to scandalous or

---

[10] ROA.12934-35.

#101824575v2

defamatory matter or other unlawful injury pursuant to 11 U.S.C. §§ 107(b)(2) and

107(c)." ROA.12934.[11]

That same day, based on the record evidence, including the UST Report and

Mr. Trahant's testimony at the Show-Cause Hearing, the Bankruptcy Court issued a

---

[11] "In the bankruptcy context, the right of public access is codified in a specific statutory provision, 11 U.S.C. § 107." *In re Blake*, 452 B.R. 1, 7 (Bankr. D. Mass. 2011) (internal citations omitted). Section 107(a) of the Bankruptcy Code provides: "Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). Section 107(b), in turn, recognizes exceptions to the right of access:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). "Because § 107 speaks directly to the question of public access, . . . it supplants the common law for purposes of determining public access to papers filed in a bankruptcy case." *In re Blake*, 452 B.R. at 7 (internal citations omitted); *see also Father M. v. Various Tort Claimants (In re Roman Cath. Archbishop of Portland)*, 661 F.3d 417, 431 (9th Cir. 2011) ("Because § 107 speaks directly to and conflicts with significant aspects of the common law right of access, we join our sister circuits in holding that § 107 preempts the common law right of access in bankruptcy proceedings."). "While sealing is the exception rather than the rule, the decision whether to seal bankruptcy court records *lies within the discretion of the bankruptcy court*." *In re Fibermark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005) (emphasis added).

The UST Report and its exhibits include, among other things, information regarding sexual abuse claimants and details of their alleged abuse. During the Show-Cause Hearing, *after having reviewed the UST Report and its exhibits*, the Bankruptcy Court made a specific finding that the UST Report is under seal because it contains "scandalous" and "defamatory" information pursuant to the applicable legal framework—§ 107(b)(2) of the Bankruptcy Code. ROA.12866-67. Nevertheless, whether the Bankruptcy Court appropriately partially sealed the record pursuant to § 107 is not an enumerated issue on appeal identified in Mr. Trahant's opening brief.

#101824575v2

Memorandum Opinion and Order (the "**October 11, 2022 Opinion**"), for the first time imposing sanctions against Mr. Trahant in the form of attorneys' fees and costs. ROA.13168-97. The Bankruptcy Court explained that the evidence presented at the Show-Cause Hearing "reconfirmed" its initial finding based on the record and the UST Report and established by clear and convincing evidence that Mr. Trahant violated the Protective Order. ROA.13193. The evidence also revealed that Mr. Trahant's "subsequent evasion and failure to provide information timely to counsel for the Committee and the Debtor regarding his own conduct constitute bad-faith actions which caused the Debtor, the Committee, and the UST to divert and expend resources unnecessarily to uncover information that Trahant had all along." ROA.13193-94.

The Bankruptcy Court imposed sanctions in the form of attorneys' fees and expenses

> pursuant to Rule 37, its inherent authority, and § 105 of the Bankruptcy Code . . . to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders, but also to preserve the integrity of the bankruptcy process and protect it from abuse.

ROA.13194. Specifically, the Bankruptcy Court assessed sanctions in the amount of $400,000.00—approximately 53% of $760,884.73, the total amount of attorneys' fees and expenses incurred by professionals of the Debtor and the Committee in

responding to the Sealed Motion to Compel and investigating the Protective Order violation that Mr. Trahant had attempted to conceal. ROA.13196.

**H. Mr. Trahant's Appeals.**

On October 21, 2022, Mr. Trahant appealed the October 11, 2022 Opinion to the District Court, thereby initiating Civil Action No. 22-4101 (together with Civil Action No. 22-1740, the "**District Court Appeals**"). ROA.13198-200. The District Court Appeals were consolidated as related cases on February 10, 2023. ROA.4005-06.

On March 27, 2023 (the "**March 27, 2023 Opinion**"), Judge Greg Guidry affirmed the Bankruptcy Court's June 7, 2022 Order and October 11, 2022 Opinion, finding that the Bankruptcy Court did not deprive Mr. Trahant of due process in entering the June 7, 2022 Order or abuse its discretion in imposing sanctions with respect to the October 11, 2022 Opinion. ROA.4568-82. Judge Guidry subsequently recused himself from the District Court Appeals on April 28, 2023 "to avoid any possible appearance of personal bias or prejudice." ROA.4654, 14149.

The District Court Appeals were re-allotted to Judge Barry Ashe on May 1, 2023. ROA.4767. On June 21, 2023 (the "**June 21, 2023 Opinion**"), Judge Ashe denied Mr. Trahant's motion for rehearing of the March 27, 2023 Opinion and corresponding judgments entered on March 28 and April 11, 2023, as well as Mr. Trahant's motion to vacate the March 27, 2023 Opinion and corresponding

judgments. ROA.4748-92. Nevertheless, Judge Ashe withdrew the March 27, 2023 Opinion and substituted his own June 21, 2023 Opinion in its place. ROA.4748-92. Judge Ashe found that the Bankruptcy Court did not deprive Mr. Trahant of due process in entering the June 7, 2022 Order or October 11, 2022 Opinion, that it had jurisdiction to enter the October 11, 2022 Opinion, and that such opinion was fully supported by the evidence and the law. ROA.4748-92.

Mr. Trahant filed his Notice of Appeal to this Court on July 14, 2023, thereby initiating the above-captioned appeal. ROA.4793-94. On August 9, 2023, Mr. Trahant filed an *Opposed Motion to Unseal Record on Appeal, or Alternatively Unopposed Motion for Access to Sealed Record on Appeal, and Opposed Motion to Establish Evidentiary Record on Appeal*. Doc. 25. On August 16, 2023, this Court granted the motion in part as to Mr. Trahant's request to view and obtain sealed documents but denied the motion as to Mr. Trahant's requests to unseal the sealed portions of the record on appeal and establish the evidentiary record. Doc. 31-2.

## SUMMARY OF THE ARGUMENT

*First*, the Bankruptcy Court did not violate Mr. Trahant's right to due process of law. The June 7, 2022 Order imposed no sanctions. It was issued pursuant to § 105(a) of the Bankruptcy Code to enforce the Bankruptcy Court's Protective Order and to prevent a further abuse of process. Indeed, the Bankruptcy Court issued the Show-Cause Order naming Mr. Trahant and held the Show-Cause Hearing, during

#101824575v2

which Mr. Trahant offered sworn testimony and was represented by counsel, before imposing sanctions in the form of attorneys' fees and costs in the October 11, 2022 Opinion.

*Second*, Mr. Trahant's appeal of the interlocutory June 7, 2022 Order did not divest the Bankruptcy Court of jurisdiction over issues concerning the Protective Order violation. Mr. Trahant failed to seek leave to appeal. The District Court, therefore, lacked jurisdiction under 28 U.S.C. § 158(a) until the Bankruptcy Court imposed sanctions on October 11, 2022, which rendered the June 7, 2022 Order "final" for purposes of appeal.

*Third*, the Bankruptcy Court did not abuse its discretion or clearly err in finding that Mr. Trahant knowingly and willfully violated the Protective Order. That finding was supported by extensive factual findings contained in the UST Report, as well as admissions in Mr. Trahant's own sworn statements and documents produced to the UST, and was reconfirmed by Mr. Trahant's testimony at the Show-Cause Hearing.

*Fourth*, the Bankruptcy Court did not abuse its discretion in sanctioning Mr. Trahant for $400,000.00—approximately 53% of the attorneys' fees and expenses incurred by Debtor and Committee professionals in investigating the breach of the Protective Order that Mr. Trahant had attempted to conceal. The Bankruptcy Court made a specific finding of bad faith and found by clear and convincing evidence that

Mr. Trahant violated the Protective Order. Weighing Mr. Trahant's untenable excuses for violating the Protective Order against the waste of time and resources caused by his failure to come forward, the Bankruptcy Court determined that sanctions in the form of attorneys' fees and expenses were necessary to serve as a deterrent and to protect the integrity of the bankruptcy process. The Bankruptcy Court, moreover, properly calculated the sanctions award by applying the lodestar analysis and independently reviewing for reasonableness the invoices submitted in response to the Show-Cause Order. Finally, a compensatory payment of roughly one-half of the attorneys' fees and expenses charged to the Debtor's estate as a result of Mr. Trahant's misconduct constitutes a reasonable, civil contempt sanction that the Bankruptcy Court was authorized to impose.

## STANDARD OF REVIEW

In considering bankruptcy appeals, this Court acts as a "second review court." *Viegelahn v. Lopez (In re Lopez),* 897 F.3d 663, 668 (5th Cir. 2018) (citations omitted). A second level of bankruptcy appellate review occurs under 28 U.S.C. § 158(d)(1) from the District Court's intermediate appellate review under 28 U.S.C. § 158(a)(1). Thus, this Court's review is of the Bankruptcy Court's decision as the trial court. *See Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon)*, 922 F.3d 13, 17 (1st Cir. 2019). As explained by the First Circuit:

> Title 28 U.S.C. § 158(a)-(b) provides for intermediate appeals either to the district court or to the BAP. *See also*

> Fed. R. Bankr. P. 8003-05. A party who loses that intermediate review may either accept the loss and return to the bankruptcy court, with the BAP or district court ruling controlling, *see, e.g.*, *In re Hermosilla*, 450 B.R. 276, 287-88 (Bankr. D. Mass. 2011), or may appeal to this court, *see* 28 U.S.C. § 158(d)(1). In the event of an appeal to this court, however, we do not review per se the BAP or district court ruling. Rather, we "assess[] the bankruptcy court's decision directly," *In re DeMore*, 844 F.3d 292, 296 (1st Cir. 2016) (quoting *In re Sheedy*, 801 F.3d 12, 18 (1st Cir. 2015)), giving no deference to the intermediate appellate ruling, *see In re IDC Clambakes, Inc.*, 852 F.3d 50, 59 (1st Cir. 2017). In short, once a notice of appeal to this court has been filed, the operative ruling under review is the bankruptcy court ruling, with the BAP or district court ruling serving more or less like an amicus brief (albeit one that can be extremely helpful). *In re Old Cold LLC*, 879 F.3d 376, 383 n.2 (1st Cir. 2018).

*Reyes-Colon*, 922 F.3d at 17. Stated differently, this Court "review[s] the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.),* 650 F.3d 593, 600 (5th Cir. 2011).

An appellate court reviews contempt findings,[12] as well as the imposition of sanctions,[13] for abuse of discretion. "[A] court abuses its discretion when it (1) relies on clearly erroneous factual findings, (2) relies on erroneous conclusions of law, or

---

[12] *See Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339 (5th Cir. 2015).

[13] *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

(3) misapplies its factual or legal conclusions." *Akzo Nobel, Inc. v. United States*, 478 F. App'x 126, 131-32 (5th Cir. 2012) (quoting *Cargill, Inc. v. United States*, 173 F.3d 323, 341 (5th Cir. 1999)).

A lower court's "underlying findings of fact are reviewed for clear error and its underlying conclusions of law reviewed de novo." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (internal citations omitted). "Whether an alleged contemnor was afforded due process is a question of law . . . review[ed] de novo." *Waste Mgmt.*, 776 F.3d at 339. A civil contempt proceeding that provides "notice and an opportunity to be heard" is constitutional. *Am. Airlines*, 228 F.3d at 583 (quoting *Placid Refin. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609, 613-14 (5th Cir. 1997)).

## ARGUMENT

### A. The Bankruptcy Court Did Not Violate Mr. Trahant's Right to Due Process of Law.

Mr. Trahant argues that the June 7, 2022 Order—disqualifying him from participating in Committee proceedings and ordering the UST to remove his clients from the Committee—punished him for contempt and imposed non-monetary sanctions against him. Doc. 55-1 at 48-54. But Mr. Trahant misapprehends the limited nature of the June 7, 2022 Order. The Bankruptcy Court has a statutory grant of authority under § 105(a) of the Bankruptcy Code "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

24

U.S.C. § 105(a). Pursuant to § 105(a), a bankruptcy court is not precluded "from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*

In issuing the June 7, 2022 Order, the Bankruptcy Court took appropriate steps to "enforce" its Protective Order and "prevent [a further] abuse of process" pursuant to its authority under § 105(a) of the Bankruptcy Code. Upon concluding that Mr. Trahant had willfully violated the Protective Order, the Bankruptcy Court was compelled to take action to end Mr. Trahant's access to Protected Material. ROA.11454-58. Because the Bankruptcy Court could neither infringe upon the right of Mr. Trahant's clients to retain counsel of their choice,[14] nor invade the attorney-client relationship to regulate communications between Mr. Trahant and his clients,[15] it had no choice but to remove his clients from the Committee to protect the integrity of the bankruptcy process. ROA.11457-58.

To be sure, Mr. Trahant's clients had no protected right to serve on the Committee, as an unsecured creditor who is excluded from a creditors' committee "can protect its pecuniary interests in a variety of other ways." *See In re Victory*

---

[14] *See Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992) (recognizing that "[t]he right to counsel in civil matters includes the right to choose the lawyer who will provide that representation") (citations omitted).

[15] *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (emphasizing the importance of full disclosure between clients and their attorneys).

*Mkts., Inc.*, 195 B.R. 9, 17 (N.D.N.Y. 1996). Even more tenuous is Mr. Trahant's nonexistent right to participate in Committee proceedings as a non-member who only participated in Committee business at the discretion of the Committee. To say that Mr. Trahant was sanctioned by his clients' removal from the Committee is a gross mischaracterization of the Committee membership process under bankruptcy law.

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). A party is not denied due process if he receives "the constitutionally required notice and an opportunity to be heard before being sanctioned." *See Placid Refin.*, 108 F.3d at 613-14. Here, Mr. Trahant was not sanctioned ***in any way*** until the Bankruptcy Court issued the October 11, 2022 Opinion, imposing attorneys' fees and costs against him. ROA.13168-97.[16] The October 11, 2022 Opinion was issued only ***after*** the Bankruptcy Court performed the following steps:

---

[16] At the beginning of the Show-Cause Hearing, the Bankruptcy Court summarized the procedural posture as follows:

> All right. So as everybody here knows, we're here today on an order to show cause. The Court issued it after, after I had read the independent report of the United States Trustee. I made some decisions, issued a couple of orders, and then issued this order to show cause. **Of course, no sanctions have been awarded yet**. That's what we're here to talk about today.

#101824575v2

- issued the Show-Cause Order that, among other things, directed Mr. Trahant to appear and show cause as to why he should not be sanctioned for his willful violation of the Protective Order and granted him access to the UST Report and all exhibits, ROA.11504-06;

- afforded Mr. Trahant an opportunity to submit a written response to the Show-Cause Order, ROA.12795-804;

- held the Show-Cause Hearing, during which Mr. Trahant himself offered sworn testimony and was represented by counsel, ROA.12849-909; and

- after taking the matter under advisement, concluded that "[t]he evidence presented at the show-cause hearing reconfirmed" its finding that Mr. Trahant violated the Protective Order, ROA.13193-96.

Mr. Trahant's civil contempt proceeding, therefore, is readily distinguishable from the cases cited in his brief where district court orders imposing sanctions were vacated. In *Goldin v. Bartholow*, this Court reversed a district court order requiring a trustee to personally pay certain trust expenses because there was "nothing in the record which would give any notice to [the trustee] that he might be held *personally* liable as a sanction for his conduct." 166 F.3d 710, 722-23 (5th Cir. 1999) (emphasis in original).

---

ROA.12856:21-12857:2 (emphasis added).

Similarly, in *Waste Management of Washington, Inc. v. Kattler,* this Court vacated a district court's contempt finding and imposition of sanctions as to an attorney where the court issued notice of a show-cause hearing that referred only to the attorney's client. 776 F.3d 336, 337-41 (5th Cir. 2015). There, the district court's contempt finding was made contemporaneously with the imposition of monetary sanctions. *See Waste Mgmt. of Wash., Inc. v. Kattler*, No. 12-3454, 2013 U.S. Dist. LEXIS 190163, at *18 (S.D. Tex. Mar. 28, 2013), *vacated*, 76 F.3d 336 (5th Cir. 2015); *see also CEATS, Inc. v. TicketNetwork, Inc.,* 71 F.4th 314, 323-24 (5th Cir. 2023) (vacating sanctions order that held individuals "jointly and severally liable for . . . fees and costs" because they received neither "notice that monetary sanctions were pending against them" nor "a pre-deprivation opportunity to defend themselves at a hearing"); *Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437, 442, 451, 455-57 (5th Cir. 2015) (vacating district court's finding of contempt as to an attorney who was simultaneously found in contempt and ordered incarcerated); *McGuire v. Sigma Coatings, Inc.,* 48 F.3d 902, 906-08 (5th Cir. 1995) (vacating for lack of personal jurisdiction district court order imposing sanctions on defendant's in-house counsel where the court "had not issued a show cause or similar order or process that would have put [the attorney] on notice that **sanctions** were being considered against him personally") (emphasis added).

Here, on the other hand, the Bankruptcy Court determined that Mr. Trahant was liable for sanctions only ***after*** issuing the Show-Cause Order, which specifically named Mr. Trahant and gave him an opportunity to be heard at the Show-Cause Hearing. ROA.13168-97.

Although not constitutionally required for the reasons discussed above, Mr. Trahant also received notice and an opportunity to defend himself before the Bankruptcy Court issued its June 7, 2022 Order in which it did not sanction Mr. Trahant but made its initial finding that he had violated the Protective Order. As detailed below, as of June 7, 2022, Mr. Trahant had been on notice for more than three months that he was a potential target of an investigation seeking to determine who violated the Protective Order, and he participated in the UST's investigation, producing evidence in his defense.

- On January 20, 2022, the Debtor filed the Sealed Motion to Compel. ROA.10894-906. Although it was sealed at that time, the title of the Sealed Motion to Compel put Mr. Trahant on notice that the Debtor alleged a violation of the Protective Order and sought to compel the Committee and/or its counsel to answer questions.

- On February 22, 2022, the Committee members and their attorneys, including Mr. Trahant, filed under seal a *Motion to Participate in Discovery* (the "**Motion to Participate**"). ROA.5007-11, 11055-60. Accordingly, as of

February 22, 2022 at the latest, Mr. Trahant had notice that he was a potential target of the Sealed Motion to Compel.

- The Bankruptcy Court held a public hearing and a public status conference on the Motion to Participate on March 17, 2022, ROA.11079-113, and April 14, 2022, ROA.11215-56, respectively. Mr. Trahant attended both. ROA.11079-113, 11215-56.

- In the meantime, Mr. Trahant offered the Trahant Declaration dated April 12, 2022, in which he admitted certain contacts with his cousin, the principal of the local high school, regarding a priest assigned to the school. ROA.13098-101.[17]

- The Bankruptcy Court's April 25, 2022 Order directing the UST to conduct an independent investigation further put Mr. Trahant on notice that the Bankruptcy Court was "very concerned about the possibility of intentional dissemination of highly confidential information in violation of th[e] Court's Protective Order." ROA.11212-14.

---

[17] As established by the Bankruptcy Court's findings in the October 11, 2022 Opinion, the Trahant Declaration is misleading at best.

- The Debtor withdrew the Sealed Motion to Compel the following day—not because the investigation of the Protective Order violation was complete, but rather, because the UST had taken over the investigation. ROA.11257-58.[18]

- Thereafter, Mr. Trahant participated in the UST's investigation, submitting written responses to discovery requests, ROA.13181, and sitting for a deposition pursuant to Bankruptcy Rule 2004, ROA.8434-725, 13102-67.

Based in part on a review of Mr. Trahant's testimony offered in connection with the UST's investigation, the Bankruptcy Court issued the June 7, 2022 Order, finding that Mr. Trahant had knowingly and willfully violated the Protective Order and taking necessary action "to protect against disruption of the bankruptcy process, to guard the rights of all parties in interest, and . . . to preserve the trust in the confidentiality of mediation." ROA.11456-58. The Bankruptcy Court did not abuse its discretion or deprive Mr. Trahant of due process in acting pursuant to § 105(a) of the Bankruptcy Code.

---

[18] Insofar as Mr. Trahant contends that the Debtor is not a proper appellee of the Bankruptcy Court's Orders because it did not move for contempt or sanctions, *see* Doc. 55-1 at 29 n.4, he overlooks that the Debtor has standing over all matters affecting the administration of the bankruptcy estate, including the enforcement of the Bankruptcy Court's Protective Order. *See, e.g.*, *Edwards Fam. P'ship v. Johnson (In re Cmty. Home Fin. Servs.)*, 990 F.3d 422, 426-27 (5th Cir. 2021) (recognizing that "[a] trustee's standing comes from the trustee's duties to administer the bankruptcy estate"). Because the Debtor is managing its affairs as a debtor-in-possession in the Chapter 11 Case, it has "all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter." *See* 11 U.S.C. § 1107(a).

## B. Mr. Trahant's Appeal of the Interlocutory June 7, 2022 Order Did Not Divest the Bankruptcy Court of Jurisdiction Concerning that Order.

Appeals from bankruptcy court orders are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts "have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from [certain] interlocutory orders and decrees issued under section 1121(d) of title 11 . . . ; and (3) with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a). To appeal a bankruptcy court's interlocutory order, an appellant must file a notice of appeal, accompanied by a motion for leave to appeal. Fed. R. Bankr. P. 8004(a)(2). If the appellant fails to file the required motion for leave to appeal, but timely files a notice of appeal, the district court may nonetheless "treat the notice of appeal as a motion for leave and either grant or deny it." Fed. R. Bankr. P. 8004(d).

The June 7, 2022 Order was interlocutory when entered because, as discussed above,[19] the Bankruptcy Court had not yet imposed sanctions.[20] Because Mr. Trahant

---

[19] *See supra*, pp. 24-26.

[20] "It is well-settled that a civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed . . . . The requirement of finality is no different when it is the bankruptcy court (rather than the district court) which has failed to assess damages." *U.S. Abatement Corp. v. Mobil Expl. & Producing U.S. (In re U.S. Abatement Corp.),* 39 F.3d 563, 567 (5th Cir. 1994) (internal citations omitted). This Court has explained:

> Determinations of liability without an assessment of damages are as likely to cause duplicative litigation in bankruptcy as they are in civil litigation and because bankruptcy litigants may appeal to district as well as to appellate courts, the waste of judicial resources is likely to be greater. The rule for appeals from bankruptcy decisions

#101824575v2

did not seek leave to appeal the June 7, 2022 Order, and the District Court did not

exercise its discretion to treat the Notice of Appeal as a motion for leave to appeal,

the District Court lacked subject matter jurisdiction under 28 U.S.C. § 158(a). The

Bankruptcy Court, therefore, retained jurisdiction concerning the Protective Order

violation,[21] as the June 7, 2022 Order was not rendered "final" for purposes of appeal

until the Bankruptcy Court imposed sanctions on October 11, 2022.

### C. The Evidence Presented at the Show-Cause Hearing "Reconfirmed" the Bankruptcy Court's Finding—and Established by Clear and Convincing Evidence—that Mr. Trahant Knowingly and Willfully Violated the Protective Order.

---

> determining liability but not damages under 28 U.S.C. § 158(d) must . . . be the same as the rule under [28 U.S.C.] § 1291.

*Id.* (quoting *In re Morrell,* 880 F.2d 855, 856-57 (5th Cir. 1987)).

[21] *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prod. Co.,* 906 F.2d 1059, 1062-64 (5th Cir. 1990) (holding that the lower court "loses jurisdiction over all matters which are **validly** on appeal") (emphasis added); *see also Barnes v. BP Expl. & Prod. Inc.,* No. 17-3036, 2022 U.S. Dist. LEXIS 156896, at *2 n.1 (E.D. La. Aug. 30, 2022) (Ashe, J.) ("The [lower] court retains jurisdiction, however, when the notice of appeal relates to an order that is not immediately appealable.") (citing *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982)).

In addition, Mr. Trahant's reliance on *Coinbase, Inc. v. Bielski,* 143 S.Ct. 1915 (2023) is entirely misplaced. In *Coinbase, Inc.,* the Supreme Court determined that a district court must stay its proceedings after denying a motion to compel arbitration when the losing party appeals as of right under 9 U.S.C. § 16(a). *Coinbase, Inc.,* 143 S. Ct. at 1918. Unlike 28 U.S.C. § 158(a) (the statute applicable to Mr. Trahant's appeal to the District Court), 9 U.S.C. § 16(a) provides an explicit right to an interlocutory appeal, creating "a rare statutory exception to the usual rule that parties may not appeal before final judgment." *Id.* at 1919.

#101824575v2

Mr. Trahant next argues that the June 7, 2022 Order and October 11, 2022 Opinion are not supported by competent evidence and that he did not violate the Protective Order. Doc. 55-1 at 58-65. These contentions likewise fail.

As the District Court correctly observed, Mr. Trahant's contention that the evidentiary record is limited to his testimony at the Show-Cause Hearing "blinks reality." ROA.4779. Indeed, the evidentiary record concerning the Protective Order violation also encompassed the UST Report and its attachments (including the Trahant Deposition Transcript), ROA.13179-83;[22] transcripts of status conferences held on February 11, 2022, March 11, 2022, and April 14, 2022, ROA.13177-79; and invoices submitted by Debtor and Committee professionals in response to the Show-Cause Order, ROA.13184-85, 13195-96. Unlike the cases invoked by Mr. Trahant, where disputed documents were not presented to the district court and, thus,

---

[22] During the Show-Cause Hearing, Mr. Trahant's counsel objected to the UST Report and its attachments on evidentiary grounds, arguing that they are hearsay and lack trustworthiness and, therefore, should not be "admitted into evidence or relied upon in any manner." ROA.12869:5-12871:14. The Bankruptcy Court overruled Mr. Trahant's evidentiary objections, correctly finding that: (a) the UST Report is presumed admissible under Federal Rule of Evidence 803(8)(A)(iii) because it contains factual findings from a legally authorized investigation; and (b) Mr. Trahant failed to "carry his burden to show that the UST Report is untrustworthy pursuant to Rule 803(8)(B)" because he "presented no evidence at the show-cause hearing to demonstrate the UST Report was biased or prejudiced against him." ROA.13186 n.23.

It is preposterous for Mr. Trahant to argue that the UST Report and its attachments are not part of the evidentiary record when he objected to the competence of such evidence at the Show-Cause Hearing, and the Bankruptcy Court specifically overruled his objections.

#101824575v2

were not considered by the court in rendering its decision,[23] the evidence at issue here was filed in the record of the Chapter 11 Case and considered by the Bankruptcy Court in issuing the June 7, 2022 Order and/or the October 11, 2022 Opinion.[24]

Mr. Trahant's argument, at its core, is that the Bankruptcy Court must use "magic words" to admit a document into evidence. Requiring such incantations amounts to "empty formalism" and elevates form over substance. *See In re Black*, No. 16-13200, 2017 U.S. Dist. LEXIS 111222, at *18-19 (E.D. La. July 18, 2017). This Court has long decried elevating form over substance. *See Mirant Peaker, LLC v. S. Md. Elec. Coop., Inc. (In re Mirant Corp.),* No. 03-46590, 2004 Bankr. LEXIS 2455, at *16 (Bankr. N.D. Tex. June 28, 2004) ("Not only are Defendants' authorities not persuasive or pertinent to the court's inquiry, they are inconsistent with the general rule that form will not prevail over substance in a bankruptcy case.") (collecting cases). Indeed, cases are not remanded because a court did not use "magic words," as long as evidence exists to support the lower court's decisions. *See Ranson v. Comm'r of Soc. Sec.,* No. 21-157, 2022 U.S. Dist. LEXIS 117643, at *11-18 (N.D. Miss. July 5, 2022).

---

[23] *See, e.g.*, *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1119 n.25 (5th Cir. 1985) (refusing to consider on appeal letters that were not presented to the district court); *United States v. Dwoskin*, 644 F.2d 418, 421 (5th Cir. 1981) ("[T]he record is clear that this check was not admitted into evidence because it could not be identified . . . . We can not consider 'evidence' which is not in the record.").

[24] Indeed, this Court has already denied Mr. Trahant's attempt to limit the record on appeal.

In the October 11, 2022 Opinion, the Bankruptcy Court reiterated that its finding in the June 7, 2022 Order was based "primarily upon the factual findings contained in the UST Report—**and in no small part upon Trahant's own sworn statements and the e-mails and text messages that he himself produced to the UST**." ROA.13193 (emphasis added). As the Bankruptcy Court explained, Mr. Trahant admitted in his deposition that he exchanged "text messages and telephone calls with his cousin on December 31, 2021, and January 3–4, 2022, in which he disclosed the nature of allegations against the priest that he learned through his receipt of confidential documents produced by the Debtor;" the deposition testimony also conclusively demonstrated that Mr. Trahant contacted a reporter with the intent that an article would be published about the priest and the Debtor. ROA.13181-83. This evidence itself establishes that Mr. Trahant violated the Protective Order.

Mr. Trahant's testimony at the Show-Cause Hearing "reconfirmed" the Bankruptcy Court's finding that he violated the Protective Order. ROA.13193. Significantly, Mr. Trahant conceded that he disclosed the priest's name and the alleged abuse allegations to his cousin and a reporter to "plant a seed" in the hopes that the information would "be exposed." ROA.13187-88. Along the way, the Bankruptcy Court "heard equivocation, deflection, and inconsistency in Trahant's answers" and found that "his answers d[id] not comport with the record and the

timeline of events in this case or the actions taken by Committee counsel in investigating the breach." ROA.13189.

A review of the transcript of the Show-Cause Hearing reveals that the Bankruptcy Court did not clearly err in perceiving equivocation, deflection, and inconsistency in his answers. When asked when he informed Committee counsel that he had made contact with the local high school, Mr. Trahant:

- equivocated ("I don't know the exact date, your Honor."), ROA.12886:1;

- deflected ("I, I don't think I've been asked that . . . ."), ROA.12886:1-2;

- abruptly changed his position as to whether he could recall the exact date ("I probably, I probably could pinpoint that date."), ROA.12886:2-3; and

- deflected further by changing the subject ("But what, what was compounding the problem . . . ."), ROA.12886:3.

Additionally, when the Bankruptcy Court asked Mr. Trahant why he failed to ask for clarification or relief from the Protective Order if he was concerned about reporting a crime, he displayed no remorse. ROA.12887:10-12890:2. Mr. Trahant stated that he "planted a seed . . . because . . . this stuff needs to be exposed." ROA.12887:16-12888:24. He also complained that he believes the Debtor has designated documents as "Confidential" that are not worthy of that designation. ROA.12889:1-12890:2. Recognizing the circular nature of Mr. Trahant's response, the Bankruptcy Court reminded him that the Protective Order contains a mechanism

by which confidentiality designations must be challenged ***before*** Protected Material is divulged:

> Q      But you understand that the protective order has a process for challenging confidentiality provisions.
>
> A      I, I do.
>
> Q      And you can always come to the Court and move for relief from a protective order if you feel the need to call law enforcement . . . .

ROA.12890:3-8.

The Bankruptcy Court also raised concerns about deflection, equivocation, and inconsistency in Mr. Trahant's deposition testimony. Indeed, the Bankruptcy Court remarked during the Show-Cause Hearing that Mr. Trahant's deposition testimony was replete with conclusions follows by "buts," whereby he effectively admitted to violating the Protective Order and unsuccessfully attempted to justify his conduct with excuses. The Bankruptcy Court stated:

> I have a duty and obligation to protect the process and when I read in your testimony, in your deposition testimony that, you know, I hear a lot of, "Yeah, but. Yeah, but. Yeah, I, I planted the seed, but these are bad people. Yeah, I planted the seed, but all of these documents are confidential and that's not the way it's supposed to be." I hear you, but we do have a process for a reason and it's not, it's not okay to take confidential information, even though you don't believe it's confidential, take confidential information and, and use it for a purpose that's outside the purpose to which it was intended.

ROA.12890:18-12891:3.

The Bankruptcy Court, as the finder of fact, reasonably determined that Mr. Trahant's testimony was inconsistent with the timeline of events and the manner in which Committee counsel investigated the breach. In other words, the Bankruptcy Court concluded that if Mr. Trahant properly had informed Committee counsel about what had actually transpired, then there would have been no need for a costly, months-long investigation into the breach of the Protective Order.

Ultimately, the Bankruptcy Court: (a) found, by clear and convincing evidence, that Mr. Trahant knowingly and willfully violated the Protective Order; and (b) concluded that Mr. Trahant's violation of the Protective Order and subsequent choice to obfuscate his actions warranted a finding of bad faith:

> Trahant's testimony and the record in this case presents clear and convincing evidence that, even though a Protective Order was in place governing the confidential information produced by the Debtor and Trahant was bound by that Protective Order, he nevertheless took confidential information he received through his affiliation with the Committee and used it for his own purposes—not one for which it was intended or protected.
>
> But Trahant's testimony at the show-cause hearing and the record in this case further reveal that his actions created waste, disrupted the progress in this case, and delayed resolution of this particular matter for months. Trahant not only disobeyed this Court's Protective Order, but his subsequent evasion and failure to provide information timely to counsel for the Committee and the Debtor regarding his own conduct constitute bad-faith actions which caused the Debtor, the Committee, and the UST to

> divert and expend resources unnecessarily to uncover information that Trahant had all along.

ROA.13193-94. Under these circumstances, the Bankruptcy Court did not abuse its discretion or clearly err in finding that Mr. Trahant knowingly and willfully violated the Protective Order.

On his quest to deflect and blame-shift, Mr. Trahant makes the nonsensical argument that the Debtor waived its right to confidentiality in the information that Mr. Trahant disclosed. Doc. 55-1 at 61-65. Of course, the Debtor's sharing of certain of its own information with the local high school ***after*** and in response to Mr. Trahant's unauthorized disclosures, which occurred between December 31, 2021 and January 4, 2022, does not change the fact that Mr. Trahant violated the Protective Order. Moreover, the local high school signed and agreed to be bound by the Protective Order. ROA.13177 n.5; *see also* ROA.12994:5-12995:3.[25]

In a last-ditch effort to escape liability, Mr. Trahant asserts that he did not violate the Protective Order because the priest's name "either is public, non-protected information or should be declassified under the Protective Order." Doc. 55-1 at 64. The District Court correctly rejected both contentions. ROA.4784-85. As discussed above, it is undisputed that Mr. Trahant only learned of the allegations

---

[25] Mr. Trahant also misrepresents the contents of the UST Report, falsely suggesting that the UST did not find any wrongdoing. Doc. 55-1 at 61-64.

against the priest at the local high school through the Debtor's production of documents marked "CONFIDENTIAL" under the Protective Order. Furthermore, Mr. Trahant conceded that he disclosed the priest's name to his cousin and a reporter not in a vacuum—but to "plant a seed" that the priest was associated with the sexual abuse claims that Mr. Trahant pursues. That association was not public. *See supra*, pp. 11-12, 15-16, 36-37.

Mr. Trahant's contention that the priest's name should be "declassified" fares no better. Although Paragraph 6(e) of the Protective Order provides that the failure of a party initially to challenge a confidentiality designation does not preclude the party from challenging the designation at a later time, it does not empower a party to disclose Protected Material before the designation has been lifted. *See* ROA.10806-07. As the District Court observed, Mr. "Trahant's reading of the provision . . . places the proverbial cart before the horse." ROA.4785. In other words, Mr. Trahant may not invoke this provision to evade liability for Protective Order violations that he already committed.

### D. The Bankruptcy Court Did Not Abuse its Discretion in Sanctioning Mr. Trahant for Approximately 53% of the Attorneys' Fees and Expenses Incurred By Debtor and Committee Professionals in Investigating the Protective Order Violation.

#### a. Legal Standards.

The Fifth Circuit has held that § 105(a) of the Bankruptcy Code empowers bankruptcy courts to issue civil contempt orders. *See Placid Refin.*, 108 F.3d at 613.

Additionally, "[f]ederal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017) (citations omitted). "The Fifth Circuit has held that the imposition of sanctions using § 105 as well as the inherent power of the Court must be accompanied by a specific finding of bad faith." *In re Bradley*, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013) (citing *Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328, 332 (5th Cir. 2008); *Goldin*, 166 F.3d at 722; *In re Paige*, 365 B.R. 632, 638 (Bankr. N.D. Tex. 2007)).

Moreover, Federal Rule of Civil Procedure 37(b), made applicable to bankruptcy proceedings by Bankruptcy Rules 7026 and 9014, allows courts to impose sanctions for the failure to comply with discovery orders. The Fifth Circuit has held that violations of protective orders are sanctionable pursuant to Rule 37(b)(2)(A). *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 489-90 (5th Cir. 2012). Rule 37(b)(2) "authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Id.* at 488 (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983)). Although district courts have "broad discretion under Rule 37(b) to fashion remedies suited to the misconduct," usually "a finding of bad faith or willful misconduct [is required] to support the severest

remedies under Rule 37(b) — striking pleadings or dismissal of a case." *Id.* (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)). "Lesser sanctions," such as imposition of attorneys' fees and expenses, "do not require a finding of willfulness." *Id.* at 488-89 (citing *Chilcutt v. United States*, 4 F.3d 1313, 1320 n.17, 1323 n.23 (5th Cir. 1993)).

"Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980). "Sanctions are proper where clear and convincing evidence indicates '(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court order.'" *Shaw v. Ciox Health LLC*, No. 19-14778, 2021 U.S. Dist. LEXIS 213328, at *7 (E.D. La. Nov. 4, 2021) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002)).

### b. The Bankruptcy Court's Sanctions Award.

The Bankruptcy Court imposed sanctions against Mr. Trahant in the form of attorneys' fees and expenses

> pursuant to Rule 37, its inherent authority, and § 105 of the Bankruptcy Code . . . to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders, but also to preserve the integrity of the bankruptcy process and protect it from abuse.

43

ROA.13194. At no time during the course of the sanctions proceedings did Mr. Trahant object to the invoices submitted in response to the Show-Cause Order. Although Mr. Trahant lodges various challenges to the Bankruptcy Court's imposition of sanctions, all of those arguments lack merit.

As an initial matter, the Bankruptcy Court's imposition of sanctions under Rule 37, its inherent authority, and § 105 of the Bankruptcy Code was appropriate because, as discussed above, the Bankruptcy Court made a specific finding of bad faith and found by clear and convincing evidence that Mr. Trahant knowingly and willfully violated the Protective Order. *See supra*, pp. 39-40.

"A party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2021 U.S. Dist. LEXIS 175207, at *3 (E.D. La. Sept. 15, 2021) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). Here, the Bankruptcy Court reasonably found that Mr. Trahant's "subsequent evasion and failure to provide information timely to counsel for the Committee and the Debtor regarding his own conduct constitute **bad-faith actions** which caused the Debtor, the Committee, and the UST to divert and expend resources unnecessarily to uncover information that Trahant had all along." ROA.13193-94 (emphasis added).

Adhering to his pattern of deflection and blame-shifting, Mr. Trahant argues, disingenuously, that he "made every effort to discuss what he knew but was repeatedly rebuffed." Doc. 55-1 at 74-75. Of course, Mr. Trahant did not need an invitation from the Bankruptcy Court to disclose what he had done. As detailed below, the record reflects that Mr. Trahant had countless opportunities to come forward but, instead, made the deliberate decision to withhold information concerning his conduct and point the finger elsewhere in an effort to conceal his actions.

- Mr. Trahant, through his co-counsel, contacted the Bankruptcy Court via email to request permission to attend a status conference to be held on February 11, 2022. Rather than disclosing Mr. Trahant's conduct, the email stated that discovery should be pursued against the *Debtor*. ROA.12901:1-5; *see also* ROA.9435.

- On February 22, 2022, the Motion to Participate was filed on behalf of the Committee members and their attorneys, including Mr. Trahant. The Motion to Participate, likewise, did not disclose Mr. Trahant's conduct. ROA.5007-11, 11055-60.

- On March 17, 2022, the Bankruptcy Court held a public hearing on the Motion to Participate. ROA.11079-113. Mr. Trahant made an appearance but remained silent while counsel for the Committee members and their attorneys

argued that they did not "think it's appropriate to have a deposition or . . . discovery propounded upon committee members and, potentially, their state court counsel as well without any reciprocal discovery going the other way." ROA.11088:25-11089-3.[26]

- A month later, Mr. Trahant offered the Trahant Declaration dated April 12, 2022, in which he admitted certain contacts with his cousin, the principal of the local high school, regarding a priest assigned to the school. ROA.13098-101. But Mr. Trahant falsely insisted that he "did not provide any 'confidential' documents to or discuss the contents of any 'confidential' documents with" officials at the local high school and "did not disclose or disseminate any documents marked in any way confidential, the contents of documents, or any other information produced by the Debtor to" anyone affiliated with local newspapers. ROA.13100-01.

- On April 14, 2022, the Bankruptcy Court conducted a public status conference on the Motion to Participate. ROA.11215-56. Once again, Mr. Trahant made an appearance but otherwise remained silent. ROA.11215-56.

---

[26] Although the Bankruptcy Court did not rule on the Motion to Participate or otherwise authorize the Committee members and their individual attorneys to propound discovery upon the Debtor, the UST propounded discovery upon and deposed Debtor representatives during the course of its independent investigation. ROA.13179-80.

#101824575v2

The Bankruptcy Court found that Mr. Trahant's failure to come forward "created waste, disrupted the progress in this case, and delayed resolution of this particular matter for months," as he caused the Debtor, the Committee, and the UST to embark on a quest for information that he had all along. ROA.13193-94. In addition, the Bankruptcy Court rejected as "disingenuous and difficult to accept" Mr. Trahant's assertions that he did not breach the Protective Order. ROA.13194. In light of the "clear language of the Protective Order" and the fact that Mr. Trahant is a "seasoned attorney" who owed a fiduciary duty to the Committee's constituency, the Bankruptcy Court determined that sanctions in the form of attorneys' fees and expenses were necessary to serve as a deterrent and to preserve the integrity of the process. ROA.13194.

To the extent that Mr. Trahant challenges the amount of the sanctions award, he has waived that argument by failing to raise it before the Bankruptcy Court. *See In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990) ("It is well established that [appellate courts] do not consider arguments or claims not presented to the bankruptcy court."). Nevertheless, as detailed below, the Bankruptcy Court did not abuse its discretion in calculating the amount of the sanctions award.

"Once a court orders that a party must pay reasonable fees and expenses as a sanction, the lodestar analysis is then used to determine the proper amount of fees 'by multiplying the reasonable number of hours expended in defending the suit by

the reasonable hourly rates for the participating lawyers.'" *In re Oil Spill*, 2021 U.S. Dist. LEXIS 175207, at *4 (quoting *Skidmore Energy v. KPMG,* 455 F.3d 564, 568 (5th Cir. 2006)). In fashioning the sanctions award here, the Bankruptcy Court correctly applied the lodestar analysis, multiplying the reasonable number of hours expended by Debtor and Committee professionals in investigating the Protective Order violation by the reasonable hourly rates for those professionals. ROA.13194-95.

In connection with that process, the Bankruptcy Court reviewed the invoices submitted in response to the Show-Cause Order. ROA.13195.[27] "Considering the complexities of this matter, including the seriousness of the breach of the Protective Order, as well as the number of attorneys and law firms involved, and the prevailing rates in the home markets of those law firms," the Bankruptcy Court found that the amounts incurred were reasonable. ROA.13195.

Recognizing that courts in the Eastern District tend to reduce fee awards by 50% as a "substitute for the exercise of proper billing judgment," the Bankruptcy Court applied a similar reduction. ROA.13195. To that end, the Bankruptcy Court

---

[27] "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable hours." *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Here, the Bankruptcy Court fulfilled such duty by examining the signed fee statements with attached invoices filed by professionals of the Debtor and the Committee. ROA.13184-85, 13195-96.

#101824575v2

imposed sanctions in the amount of $400,000.00, which is approximately 53% of $760,884.73—the total amount of attorneys' fees and expenses incurred by professionals of the Debtor and the Committee in responding to the Sealed Motion to Compel and investigating the Protective Order violation. ROA.13196.[28] The Bankruptcy Court explained that, under the circumstances, the sanctions award was narrowly tailored to the particular wrong, as "an award of a percentage of the fees and costs incurred will serve the desired purpose of deterring Trahant and others from engaging in similar misconduct." ROA.13196.[29]

In *Topalian v. Ehrman*, the Fifth Circuit held that a trial court's findings in ordering sanctions must reflect the following four factors:

> (1) *What conduct is being punished or is sought to be deterred by the sanction?* . . . (2) *What expenses or costs were caused by the violation of the rule?* . . . (3) *Were the*

---

[28] As the Bankruptcy Court observed, "the figure of $760,884.73 does not reflect the time and resources spent by the UST in completing its very thorough and comprehensive investigation." ROA.13196 n. 27. This figure also does not reflect the devastating impacts on the Chapter 11 Case itself, including the massive disruption in the progress of the Debtor's reorganization.

[29] The law is well-settled that bankruptcy courts have the authority to enter civil contempt orders. *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 78 (S.D. Tex. 2000) (citations omitted). An "order requiring a contemnor to make a compensatory payment to the other party has consistently been categorized as civil contempt." *In re Rodriguez*, No. 06-323, 2007 U.S. Dist. LEXIS 11858, at *31 (W.D. Tex. Feb. 20, 2007) (citing *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). "Where a civil contempt fine exceeds the actual loss suffered by the complainant, the fine may become punitive in nature, and therefore more appropriate pursuant to a finding of criminal contempt." *Id.*

Pursuant to § 330(a)(1) of the Bankruptcy Code, the Debtor's estate pays all allowed fees and expenses for professionals of the Debtor as well as the Committee. Here, a compensatory payment of approximately ***one-half*** of the attorneys' fees and expenses charged to the Debtor's estate as a result of Mr. Trahant's misconduct constitutes a civil contempt sanction.

#101824575v2

> *costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? . . . (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?*

3 F.3d 931, 936-37 (5th Cir. 1993) (emphasis in original). As detailed above, the Bankruptcy Court's comprehensive, factual findings in the October 11, 2022 Opinion reflect the following:

1) the sanction was designed "to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders" and "to preserve the integrity of the bankruptcy process and protect it from abuse," ROA.13194,

2) a total of $760,884.73 in attorneys' fees and expenses was incurred by Debtor and Committee professionals in responding to the Sealed Motion to Compel and investigating the Protective Order violation, ROA.13196,

3) the Bankruptcy Court's independent review of the invoices revealed that the amounts incurred were reasonable given the complexities of the matter, ROA.13195, and

4) the sanction was narrowly tailored to the particular wrong because "an award of a percentage of the fees and costs incurred will serve the desired purpose of deterring Trahant and others from engaging in similar misconduct," ROA.13196.

The Bankruptcy Court did not abuse its discretion in deciding to impose sanctions or in carefully crafting its sanctions award.

## CONCLUSION

For the foregoing reasons, this Court should affirm the Bankruptcy Court's June 7, 2022 Order and October 11, 2022 Opinion.

#101824575v2

Dated: November 27, 2023          Respectfully submitted,

/s/ Mark A. Mintz
R. Patrick Vance (#13008)
Mark A. Mintz (#31878)
Samantha A. Oppenheim (#38364)
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, LA 70170
Telephone:  504-582-8368
Facsimile:   504-589-8368
Email:  pvance@joneswalker.com
        mmintz@joneswalker.com
        soppenheim@joneswalker.com

***Counsel for Appellee,***
***The Roman Catholic Church***
***of the Archdiocese of New Orleans***


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief has been served on all counsel of record by operation of the Court's electronic filing system on November 27, 2023.

/s/ Mark A. Mintz
Mark A. Mintz

51

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,440 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: November 27, 2023     */s/ Mark A. Mintz*
_____
Mark A. Mintz

**Counsel for Appellee,**
**The Roman Catholic Church**
**of the Archdiocese of New Orleans**

#101824575v2